UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARCEL FASHIONS GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> LUCKY BRAND DUNGAREES, INC., LIZ CLAIBORNE, INC., and LUCKY BRAND DUNGAREES STORES, INC., <br> Defendants. | 11 Civ. 5523 (LTS) <br><br> **ECF CASE** |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

*Attorneys for Defendants Lucky Brand Dungarees, Inc., Liz*
*Claiborne, Inc., and Lucky Brand Dungarees Stores, Inc.*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

Preliminary Statement ........................................................................................................ 1

Statement of Undisputed Facts .......................................................................................... 5

    Lucky Brand and Its Famous Trademarks ....................................................................... 5

    Marcel's "Get Lucky" Trademark ................................................................................... 6

    Marcel's Repeated Efforts to Cash In on Lucky Brand's Fame and Goodwill ............... 7

        A.     The 2001 Action and Settlement .............................................................. 7

        B.     The 2005 Action ...................................................................................... 8

        C.     The Current Action ................................................................................. 11

        D.     The Proposed Amended Complaint ........................................................ 12

Argument .......................................................................................................................... 12

I.      MARCEL'S CLAIMS ARE BARRED BY RES JUDICATA AS A RESULT OF THIS COURT'S FINAL ORDER AND JUDGMENT .................................................. 12

II.     MARCEL HAS WAIVED ITS RIGHT TO SEEK INJUNCTIVE RELIEF OR FURTHER DAMAGES ............................................................................................ 16

III.    THERE IS NO BASIS FOR MARCEL'S REQUEST FOR INJUNCTIVE RELIEF AND DAMAGES ......................................................................................... 17

IV.   THE ALLEGATIONS IN MARCEL'S PROPOSED AMENDED COMPLAINT IN NO WAY DEFEAT THE APPLICATION OF SUMMARY JUDGMENT HERE .................................................................................................................... 21

Conclusion ....................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Chicle Co.* v. *Topps Chewing Gum, Inc.*,
210 F.2d 680 (2d Cir. 1954) .................................................................................................20

*Bank of India* v. *Trendi Sportswear, Inc.*,
239 F.3d 428 (2d Cir. 2000) .................................................................................................12

*Berlitz Sch. of Languages of Am., Inc.* v. *Everest House*,
619 F.2d 211 (2d Cir. 1980) .................................................................................................14

*City of Chicago* v. *Harris Trust & Savings Bank*,
371 N.E. 2d 1182 (Ill. App. Ct. 1977) ..................................................................................15

*eBay, Inc.* v. *MercExchange, LLC*,
547 U.S. 388 (2006) .............................................................................................................18

*Gen. Motors Acceptance Corp.* v. *Clifton-Fine Cent. Sch. Dist.*,
85 N.Y.2d 232 (N.Y. 1995) ...................................................................................................16

*Green* v. *Illinois Dep't of Transp.*,
609 F. Supp. 1021 (N.D. Ill. 1985) .......................................................................................15

*Illinois High School Ass'n, Inc.* v. *GTE Vantage*,
99 F.3d 244 (7th Cir. 1996) ..................................................................................................20

*Jim Beam Brands Co.* v. *Beamish & Crawford Ltd.*,
937 F.2d 729 (2d Cir. 1991) ...........................................................................................14, 18

*Juicy Couture, Inc.* v. *L'Oreal USA, Inc.*,
No. 04 Civ. 7203, 2006 WL 1012939 (S.D.N.Y. Apr. 19, 2006)...........................................17

*Liebowitz* v. *Elsevier Science Ltd.*,
927 F. Supp. 688 (S.D.N.Y. 1996) .......................................................................................16

*Michael Grecco Photography, Inc.* v. *Everett Collection, Inc.*,
589 F. Supp. 2d 375 (S.D.N.Y. 2008) ...................................................................................16

*Mooney* v. *City of New York*,
219 F.3d 123 (2d Cir. 2000) .................................................................................................16

*Norman* v. *Niagara Mohawk Power Corp.*,
873 F.2d 634 (2d Cir. 1989) .................................................................................................14

*Phoenix Canada Oil Co., Ltd.* v. *Texaco Inc.*,
749 F. Supp. 525 (S.D.N.Y. 1990) .......................................................................................15

ii

*Pricaspian Dev. Corp. (Texas)* v. *Royal Dutch Shell, PLC*,
    No. 08 Civ. 9726, 2009 WL 1564110 (S.D.N.Y. June 3, 2009) ............................................ 14

*R.G. Group, Inc.* v. *Horn & Hardart Co.*,
    751 F.2d 69 (2d Cir. 1984) ........................................................................................... 23, 24

*Santana Prods., Inc.* v. *Sylvester & Assocs., Ltd.*,
    No. 06-5615-CV, 2008 WL 2164658 (2d Cir. May 22, 2008) ................................................ 17

*Toyota Motor Sales, USA, Inc.* v. *Tabari*,
    610 F.3d 1171 (9th Cir. 2010) ............................................................................................ 20

*Waldman* v. *Village of Kiryas Joel*,
    207 F.3d 105 (2d Cir. 2000) ........................................................................................ 13, 14

**RULES**

Fed. R. Civ. P. 11 ................................................................................................................... 22

Fed. R. Civ. P. 56 ................................................................................................................ 1, 5

Defendants Lucky Brand Dungarees, Inc., Liz Claiborne, Inc., and Lucky Brand Dungarees Stores, Inc. (collectively, "Lucky Brand"), pursuant to Federal Rule of Civil Procedure 56, hereby move for summary judgment, dismissing with prejudice the complaint of plaintiff Marcel Fashions Group, Inc. ("Marcel").

## Preliminary Statement

This is Marcel's third attempt through legal action to exploit its obscure "Get Lucky" mark in an effort to cash in on Lucky Brand's enormously successful fashion business.

For more than 20 years, Lucky Brand has invested considerable effort and money in building what has become one of America's most recognized and respected youth-oriented jeanswear and sportswear brands. Today, Lucky Brand has more than 180 retail stores throughout the United States, employs 2,700 people, and last year sold nearly $400 million in merchandise. It is the owner of more than 70 trademarks registered with the USPTO, including the famous "Lucky Brand" and "Lucky Brand Dungarees" marks, many of which are now incontestable. Lucky Brand's tremendous success has nothing whatsoever to do with Marcel's modest apparel business that has traditionally focused on a niche market comprised of casinos, hotels, hospitals, Indian reservations and theme parks. Nor is the goodwill that Lucky Brand has built over 20-plus years in its Lucky Brand Marks[1] due in any part to the rights Marcel may have in its "Get Lucky" trademark.

To the extent that Marcel believed Lucky Brand's use of its Lucky Brand Marks was somehow violating Marcel's rights, Marcel chose for years not to pursue any such claim. Having slept on its rights for many years, Marcel launched its first ill-fated trademark

---

[1]   Marcel has not specified which of the Lucky Brand trademarks are at issue in this litigation. For purposes of this motion, we assume that only those marks that include the word "Lucky" are at issue. Those marks are referred to herein as the "Lucky Brand Marks."

1

infringement action against Lucky Brand in 2001. That litigation resulted in a 2003 Release and Settlement Agreement in which, among other things, Lucky Brand agreed not to use "Get Lucky" as a trademark, and Marcel agreed to release Lucky Brand from any and all claims arising out of Lucky Brand's use of its own Lucky Brand trademarks.

Apparently unsatisfied with that result, in 2004 Marcel again sought to exploit Lucky Brand's goodwill when it joined with a new licensee to launch a "Get Lucky" line of jeanswear and sportswear products in the same apparel market Lucky Brand had occupied for many years. That led Lucky Brand to file a trademark infringement action in this Court in 2005 captioned *Lucky Brand Dungarees, Inc., Liz Claiborne, Inc.* v. *Ally Apparel Resources, LLC d/b/a Get Lucky, Key Apparel Resources, Ltd., Marcel Fashion Group, Inc. and Ezra Mizrachi*, Civil Action No. 05-CV-6757 (LTS) (MHD) (the "2005 Action"). In response, Marcel asserted counterclaims in which it sought not only to enjoin Lucky Brand's use of "Get Lucky," but also to enjoin Lucky Brand's use of its own Lucky Brand Marks, despite its express agreement in the 2003 Release and Settlement Agreement not to challenge Lucky Brand's use of its trademarks.

On April 22, 2009, this Court granted a permanent injunction against Lucky Brand's use of the "Get Lucky" mark, but the parties' remaining claims and defenses, including Marcel's counterclaims involving the Lucky Brand Marks, were tried before this Court and a jury beginning in April 2010. That trial resulted in a Final Order and Judgment (the "Final Order and Judgment"), which incorporates by reference the Court's earlier permanent injunction barring Lucky Brand from using the "Get Lucky" trademark, but contains no provision or order for injunctive relief with respect to the Lucky Brand Marks.

The absence of any such injunction in the Final Order and Judgment was intentional. Indeed, the issue of whether Lucky Brand should be enjoined from any further use

of the Lucky Brand Marks was specifically addressed during the drafting of the Final Order and Judgment. At the very end of the drafting process, Marcel's counsel sent an email to Lucky Brand's counsel purportedly to confirm the draft of the Final Order and Judgment to be submitted to the Court. The attached draft, which was not redlined, contained a new paragraph permanently enjoining Lucky Brand's use of the Lucky Brand Marks, which the parties had never before discussed. Because such a permanent injunction was inconsistent with the jury's verdict and this Court's rulings, Lucky Brand's counsel informed Marcel's counsel that such a provision was not acceptable. Marcel's counsel then immediately removed the permanent injunction language from the Final Order and Judgment, and submitted the final agreed-upon proposed Final Order and Judgment to the Court.

This Court signed the Final Order and Judgment on May 28, 2010, after which nearly a year passed without any suggestion from Marcel that Lucky Brand was somehow obliged to modify its trademarks or cease using them all together. It was not until it filed its complaint in this action, on April 29, 2011, that Marcel took that position for the first time.

Rather than return to this Court to seek clarification of the scope and effect of the Final Order and Judgment, Marcel instead filed this action in the Southern District of Florida—a court without any familiarity with the 2005 Action or the Final Order and Judgment—claiming it is entitled to the injunctive relief it was denied (and waived) in the 2005 Action. The Florida court summarily transferred the case to this Court.

Once again, Marcel's claims are based on its insupportable position that the Final Order and Judgment somehow entitles it to permanently enjoin the nationwide operations of a substantial fashion business that has operated under its registered and incontestable Lucky Brand

3

Marks for more than 20 years.  Such injunctive relief was not granted in the Final Order and Judgment and, as a matter of law, is not available to Marcel now.

Marcel's attempt to re-litigate the very same issues that the parties spent five years and millions of dollars litigating in the 2005 Action is without merit for each of the following reasons:

*First*, Marcel's claims are barred under the doctrine of res judicata.  The Final Order and Judgment already conclusively resolved the asserted claims and determined the appropriate relief in the 2005 Action involving the same parties, the same trademarks and the same operative facts.  Indeed, Marcel concedes that its current claims are not based on any new facts other than additional instances of what was previously asserted in the 2005 Action.

*Second*, Marcel's claims are barred by the equitable doctrine of waiver.  The reason:  Marcel specifically agreed not to include an injunctive relief provision in the Final Order and Judgment to address the purported grievance it now alleges.  Thus, Marcel voluntarily waived its right to such relief, and accepted and acknowledged that Lucky Brand would continue to have the right to use its Lucky Brand Marks.  By choosing to agree to a Final Order and Judgment that did not enjoin Lucky Brand's use of its Lucky Brand Marks, Marcel also accepted and acknowledged that the relief granted by the Court—an injunction barring Lucky Brand from using the "Get Lucky" mark and a total of $300,000 in monetary damages—fully, completely and appropriately compensated Marcel for any harm it had suffered or might continue to suffer as a result of Lucky Brand's use of its well-known Lucky Brand Marks.

*Third*, even if the Court decides that Marcel's claims are not barred by the Final Order and Judgment or the doctrine of waiver, there is still no basis to award the relief that Marcel seeks.  This is not a traditional trademark infringement action in which a junior user is

4

attempting to benefit from the reputation and goodwill of a well-established, successful senior trademark owner. On the contrary, it is undisputed that Lucky Brand built its well-known brand around the goodwill of its own incontestable Lucky Brand trademarks more than a decade before Marcel sought to enter into Lucky Brand's market. Accordingly, there is no basis to enjoin Lucky Brand's use of its well-known and long-established Lucky Brand Marks, or to award any monetary relief beyond that already granted in the Final Order and Judgment.

*Finally*, in a last-minute effort to confuse and obfuscate the issues so as to evade summary judgment, Marcel seeks leave to file a proposed amended complaint. But none of the allegations in Marcel's proposed amendment raises any material issue of fact that precludes the application of summary judgment here. Indeed, the proposed amendment suffers from the same infirmities as the original complaint: (i) it fails to identify a single example of Lucky Brand using its marks in a way that materially differs from how those marks were used at the time of the 2005 Action; and (ii) it seeks the exact same relief that was available to Marcel in the 2005 Action. Accordingly, the proposed amendment should be denied as futile.

## Statement of Undisputed Facts[2]

### Lucky Brand and Its Famous Trademarks

Lucky Brand began designing and selling vintage-inspired jeans and casual lifestyle apparel in 1990. (56.1 Stmt. ¶ 1.) Since then, Lucky Brand has invested considerable time, money, effort and creativity in building one of America's most recognized and respected youth-oriented jeanswear and sportswear brands. (*Id.* ¶ 2.) Lucky Brand's extensive promotion of its brand includes countless full-page advertisements in major fashion and lifestyle magazines

---

[2]   The facts in support of this motion are set forth fully in Defendants' Rule 56.1 Statement ("56.1 Stmt."), in the Declaration of Darren W. Johnson ("Johnson Decl."), and in the Affidavits of Michael Griffin ("Griffin Aff.") and Charlie Cole ("Cole Aff.").

such as *Vanity Fair*, *Vogue*, *In Style* and *Elle*, as well as major television and billboard advertising campaigns.  (*Id.*)  Today, Lucky Brand employs 2,700 people, has more than 180 retail stores throughout the United States, and its goods are also sold at major department stores, including Bloomingdale's, Macy's, Lord & Taylor and Nordstrom.  (*Id.*)  As a result of its extensive creative and promotional efforts, Lucky Brand sold nearly $400 million in merchandise last year.  (*Id.* ¶ 3.)

Lucky Brand is the owner of numerous incontestable trademarks registered with the USPTO, including the famous "Lucky Brand" and "Lucky Brand Dungarees" marks.  (*Id.* ¶ 4.)  In the Final Order and Judgment, this Court confirmed that these trademarks were "valid and enforceable."  (*Id.* ¶ 5.)  And in the parties' Pre-Conference Statement, filed with this Court on October 5, 2011, Marcel specifically "agree[d]" and admitted "that Lucky [Brand] owns valid federal trademark registrations for its Lucky Brand marks."  (*Id.* ¶ 6.)

**Marcel's "Get Lucky" Trademark**

Marcel purports to be a Florida-based corporation, but its complaint is notably devoid of any other information as to the nature and extent of Marcel's business.  (*Id.* ¶ 7.)  And despite our best efforts, we have not been able to find any reliable information concerning the nature and extent of Marcel's business or its "Get Lucky" brand.  The website for the "Get Lucky" brand does not appear to have been updated in many years, and though it purports to identify retail outlets that sell "Get Lucky" products, in fact none sells any such goods.  (*Id.* ¶ 8.)  And there does not appear to be any reference to any "Get Lucky" products being available for sale anywhere else.  (*Id.*)  Indeed, of the top 100 search results for the term "Get Lucky" on Google.com, not a single one of those results has anything to do with Marcel's "Get Lucky" brand.  (*Id.* ¶ 9.)

6

From the little information that Marcel has offered in prior litigation between the parties, it appears that Marcel has primarily not marketed its products to department stores or mass retailers, but instead has focused on a niche market comprised of casinos, hotels, hospitals, Indian reservations and theme parks. (*Id.* ¶ 10.)

Marcel received a federal trademark registration for "Get Lucky" in 1986 (USPTO Reg. No. 1,377,345), but this registration lapsed, and was canceled by the USPTO on November 4, 1992. (*Id.* ¶ 11.) Marcel filed a new application for "Get Lucky" on April 13, 1998, which proceeded to registration on Sept. 23, 2003 (USPTO Reg. No. 2,765,974). (*Id.*) Once again Marcel allowed its registration for "Get Lucky" to lapse, and the USPTO canceled that registration on May 1, 2010. (*Id.*) Finally, Marcel filed a third application to register "Get Lucky" on May 13, 2010, and the mark proceeded to registration on December 14, 2010 (USPTO Reg. No. 3,890,282). (*Id.*)

**Marcel's Repeated Efforts to Cash In on Lucky Brand's Fame and Goodwill**

      A.    <u>The 2001 Action and Settlement</u>

On September 9, 2001, Marcel filed a lawsuit against Lucky Brand and Federated Department Stores in the United States District Court for the Southern District of Florida, alleging, *inter alia*, federal and common law trademark infringement and unfair competition. (*See id.* ¶ 12.) On April 29, 2002, Marcel filed another lawsuit against Liz Claiborne in the United States District Court for the Southern District of Florida with similar allegations. (*Id.* ¶ 13.) The action against Liz Claiborne was consolidated with the action filed against Lucky Brand and Federated on September 13, 2002 and captioned as *Marcel Fashion Group, Inc.* v. *Lucky Brand Dungarees, Inc., and Federated Department Stores, Inc.*, Case No. 01-7495-Civ-Dimitrouleas (S.D. Fla.) (the "2001 Action"). (*Id.*)

7

The parties settled the 2001 Action in May 2003 pursuant to a Release and Settlement Agreement. (*See id.* ¶ 14.) In the Release and Settlement Agreement, Lucky Brand acknowledged Marcel's ownership of the "Get Lucky" trademark. (*Id.*) In turn, Marcel acknowledged Lucky Brand's right to use its Lucky Brand Marks. Specifically, Marcel acknowledged "Lucky Brand's rights to use, license and/or register the trademark LUCKY BRAND and/or any other trademarks, trade names, brands, advertising slogans or tag lines owned, registered and/or used by Lucky Brand in the United States and/or in any foreign country as of the date of [the] Agreement." (*Id.*)

B.   The 2005 Action

In 2004, Marcel granted a license to Ally Apparel Resources LLC and/or Key Apparel Resources, Ltd. (collectively, "Ally"), and Ally launched a "Get Lucky" line of jeanswear in the same apparel market Lucky Brand had occupied for nearly 15 years. (*Id.* ¶ 15.) In 2005, Lucky Brand Dungarees, Inc. and Liz Claiborne Inc. (the "Lucky Brand Parties") filed the 2005 Action in this Court, alleging that the "Get Lucky" jeanswear and sportswear products infringed the Lucky Brand Marks. (*Id.* ¶ 16.)

Marcel and Ally asserted counterclaims against the Lucky Brand Parties, alleging that Marcel was the senior user of the mark "Get Lucky," and that the Lucky Brand Parties' use of "Get Lucky" and the Lucky Brand Marks infringed Marcel's trademark rights and breached the 2003 Release and Settlement Agreement between Marcel and Lucky Brand. (*Id.* ¶ 17.) In their prayer for relief, Marcel and Ally sought a permanent injunction to enjoin Lucky Brand "[f]rom using the accused trademark 'GET LUCKY' or any other designation, service mark, or trademark similar to counter-plaintiffs' GET LUCKY trademark complained of herein, including the confusingly similar use of 'Lucky Brand' or 'Lucky,' in any way, including, in connection with clothing, jeans, or any similar goods which are likely to cause confusion." (*Id.* ¶ 18.)

8

On April 22, 2009, this Court granted a permanent injunction against the Lucky Brand Parties' use of the "GET LUCKY trademark on or in connection with men's and women's apparel, fragrances, and accessories." (*Id.* ¶ 19.) The parties' remaining claims and defenses were tried before this Court and a jury beginning in April 2010, resulting in the Final Order and Judgment, which was jointly drafted by the parties at the request of the Court, and which incorporated this Court's prior rulings and the jury's verdict, including an award to Marcel of $20,000 in compensatory damages and $280,000 in punitive damages. (*Id.* ¶ 20.) Both parties waived their rights to appeal the Final Order and Judgment. (*Id.* ¶ 23.)

Among other things, that Final Order and Judgment ordered, adjudged and decreed that:

- o "Ally's use of GET LUCKY as licensed from Marcel Fashion constitutes willful infringement of Lucky Brand Parties' [Lucky Brand] trademarks," but Marcel established its prior ownership, which provides "a complete defense to all claims of infringement[.]"

- o "Lucky Brand Parties infringed Marcel Fashion's GET LUCKY trademark . . . by using GET LUCKY, the LUCKY BRAND trademarks, and any other trademarks including the word 'Lucky' after May 2003."

- o "For Lucky Brand Parties' infringement of Marcel Fashion's GET LUCKY trademark on men's and women's t-shirts and on women's long sleeved shirts, and for their breach of the settlement agreement by using GET LUCKY in connection with fragrance advertising, Marcel Fashion is awarded $10,000 in compensatory damages, and $140,000 in punitive damages."

9

o "For Lucky Brand Parties' infringement of Marcel Fashion's GET LUCKY trademark by their use of GET LUCKY, the LUCKY BRAND trademarks and any other marks including the word 'Lucky' after May 2003, Marcel Fashion is awarded $10,000 in compensatory damages, and $140,000 in punitive damages."

o "The parties have jointly drafted this order and agree to waive any and all rights pursuant to Federal Rules of Civil Procedure 59 and 60. The parties further agree to waive any and all rights to appeal this order."

(*Id.* ¶ 24.)

Aside from the incorporation by reference of the Court's permanent injunction barring the Lucky Brand Parties from using Marcel's GET LUCKY trademark, the Final Order and Judgment contains no provision or order for injunctive relief. (*Id.* ¶ 25.)

The absence of any such injunction in the Final Order and Judgment was intentional. Indeed, the issue of whether Lucky should be enjoined from any further use of the Lucky Brand Marks was specifically addressed during the drafting of the Final Order and Judgment. (*Id.* ¶ 26.) At the very end of the drafting process, Marcel's counsel sent an email to Lucky Brand's counsel purportedly to confirm the draft of the Final Order and Judgment to be submitted to the Court. (*Id.*) The attached draft, which was not redlined, contained a new paragraph permanently enjoining Lucky Brand's use of the Lucky Brand Marks, which the parties had never before discussed. (*Id.* ¶ 27.) Because such a permanent injunction was inconsistent with the jury's verdict and this Court's rulings, Lucky Brand's counsel informed Marcel's counsel that such a provision was not acceptable. (*Id.* ¶ 28.) Marcel's counsel then immediately removed the permanent injunction language from the Final Order and Judgment, and submitted the final agreed-upon proposed Final Order and Judgment to the Court. (*Id.* ¶ 29.)

The Court entered the Final Order and Judgment, as submitted jointly by the parties, without modification. (*Id.* ¶ 30.)

C.    The Current Action

After entry of the Final Order and Judgment on May 28, 2010, nearly a year passed without any suggestion from Marcel that Lucky Brand was somehow obliged to modify its Lucky Brand Marks or cease using them all together.  It was not until it filed its complaint in this action, on April 29, 2011, that Marcel took that position for the first time. (*Id.* ¶ 31.)

Rather than return to this Court to seek clarification of the scope and effect of the Final Order and Judgment, Marcel instead filed this action in the Southern District of Florida—a court without any familiarity with the 2005 Action or the Final Order and Judgment—claiming it is entitled to the injunctive relief it was denied in the 2005 Action. (*Id.* ¶ 32.)  Marcel concedes that this action is not based on any new facts or different conduct.  Indeed, each of the claims in the complaint is predicated on allegations that Lucky Brand is "using the Lucky Brand marks in the identical manner and form on the same goods" as the marks and goods at issue in the 2005 Action. (Johnson Decl., Exh. 16 (2011 Compl.) ¶ 15; *see also* 56.1 Stmt. ¶ 33.)

On May 27, 2011, Lucky Brand moved to transfer this action to this Court. (*Id.* ¶ 35.)  Judge William J. Zloch referred the motion to Magistrate Judge Robin Rosenbaum, who recommended transfer of the action to this Court, concluding that "[a]t its core, [the instant action] asserts the same infringement claims" set forth in the 2005 Action, with the "only real difference . . . that Marcel now seeks an equitable remedy that it was not awarded—and arguably waived—despite having ample opportunity and incentive to pursue that remedy." (*Id.* ¶ 37.)  Judge Zloch adopted Magistrate Judge Rosenbaum's recommendation and transferred the action to this Court by Order dated August 8, 2011. (*Id.* ¶ 38.)

11

D.   The Proposed Amended Complaint

On November 29, 2011, seven months after Marcel filed its complaint, and ten days before Lucky Brand was scheduled to file its motion for summary judgment, Marcel notified Lucky Brand for the first time that it intended to amend its complaint. (*Id.* ¶ 39.)  A copy of the proposed amended complaint was provided to Lucky Brand on December 14, 2011, and Marcel filed a motion for leave to amend the complaint on December 23, 2011. (*Id.* ¶¶ 40, 44.)  The proposed amendment primarily reflects a change in Marcel's legal theory, not any new facts that would defeat summary judgment.  Indeed, the proposed amendment fails to identify a single example of Lucky Brand using its marks in a way that materially differs from how those marks were used at the time of the 2005 Action, and it seeks the exact same relief that was available to Marcel in the 2005 Action.

**Argument**

**I.**

**MARCEL'S CLAIMS ARE BARRED BY RES JUDICATA
AS A RESULT OF THIS COURT'S FINAL ORDER AND JUDGMENT**

This action is barred under the doctrine of res judicata because this Court's Final Order and Judgment conclusively resolved the asserted claims and determined the appropriate relief in a previous action involving the same parties, the same trademarks and the same nucleus of operative facts.

Under the doctrine of res judicata, or claim preclusion, a "final adjudication on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Bank of India* v. *Trendi Sportswear, Inc.*, 239 F.3d 428, 439 (2d Cir. 2000).  The rule applies to claims that post-date the prior action where those

12

purportedly new claims are "nothing more than additional instances of what was previously asserted," and plaintiff has based the second action "principally upon the common nucleus of operative facts shared with" the previous action. *Waldman* v. *Village of Kiryas Joel*, 207 F.3d 105, 113 (2d Cir. 2000). "[T]he facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit. It is instead enough that 'the facts essential to the second were [already] present in the first.'" *Id.* at 110–11 (emphasis in original) (quoting *Computer Assocs. Int'l, Inc.* v. *Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997)).

These principles of res judicata plainly apply here. There is no dispute that the Final Order and Judgment constitutes a final adjudication on the merits involving the same parties and the same trademarks. Nor can there be any question that Marcel's purportedly new claims are "nothing more than additional instances of what was previously asserted," and that Marcel has based this action "principally upon the common nucleus of operative facts shared with" the 2005 Action. *Waldman*, 207 F.3d at 113. Indeed, Marcel itself concedes that:

- Lucky Brand is "using the Lucky Brand marks in the identical manner and form and on the same goods" as the marks and goods at issue in the 2005 Action (56.1 Stmt. ¶ 33);

- "Defendants' use of [their] marks has been . . . wholly consistent with their use prior to the entry of the Final Order and Judgment" (*id.* ¶ 34); and

- "This case is not a new claim . . . but rather is based on the judicial finding that the marks used on the same goods in the identical manner has continued despite the entry of the Final Order and Judgment." (*Id.*)

These admissions make plain that Marcel is seeking to circumvent the bar of res judicata by relying upon additional instances of the same conduct to revive claims that would

otherwise be barred.  The courts in this Circuit have repeatedly rejected this tactic.  *See, e.g.,*
*Waldman*, 207 F.3d at 113 (barring subsequent suit alleging only additional instances of conduct
at issue in prior action); *Norman* v. *Niagara Mohawk Power Corp.*, 873 F.2d 634, 638 (2d Cir.
1989) (although some acts complained of occurred after prior suit, it was "readily apparent that
they were all part of the same cause of action and arose from a 'single core of operative facts'");
*Berlitz Sch. of Languages of Am., Inc.* v. *Everest House*, 619 F.2d 211, 214–15 (2d Cir. 1980)
(barring trademark infringement claims where subsequent alleged infringing conduct was
"virtually identical" to that in prior infringement proceeding); *Pricaspian Dev. Corp. (Texas)* v.
*Royal Dutch Shell, PLC*, No. 08 Civ. 9726, 2009 WL 1564110, at *12 (S.D.N.Y. June 3, 2009)
(dismissing complaint based on "new acts subsequent to the previous suit" where new claims
were based "principally upon the common nucleus of operative facts shared with" claims in
previous suit), *aff'd*, 382 Fed. Appx. 100 (2d Cir. June 29, 2010).

It is entirely consistent with the principles of fairness and equity to bar Marcel's
request for a "second bite at the apple," both in terms of damages and injunctive relief, where
Marcel simply complains that Lucky Brand's prior conduct has continued.  Indeed, courts in this
Circuit and others have repeatedly held that where (as here) a plaintiff faces the prospect of
alleged misconduct that is likely to continue, it is incumbent upon the plaintiff to seek some form
of permanent relief in its original action, rather than burden the courts and defendants with an
endless stream of successive lawsuits seeking different remedies for the exact same conduct.
*See, e.g., Jim Beam Brands Co.* v. *Beamish & Crawford Ltd.*, 937 F.2d 729, 736 (2d Cir. 1991)
("Res judicata, or claim preclusion, prevents the subsequent litigation by either party of any
ground of recovery that was available in the prior action, whether or not it was actually litigated
or determined . . . . [Thus,] [i]f an injunction against trademark infringement was . . . available to

[plaintiff] in [the prior] proceedings, that availability would preclude the present pursuit of such a claim by [plaintiff]."); *Phoenix Canada Oil Co., Ltd.* v. *Texaco Inc.*, 749 F. Supp. 525, 537 (S.D.N.Y. 1990) (res judicata bars claim for royalty payments coming due after prior litigation where plaintiff could have included claim for "declaratory or injunctive relief covering future royalty periods" in the earlier action; "had [plaintiff] pressed its . . . claim . . . as it should have, the [earlier] court's decision would have governed the parties' rights for future royalty periods"); *Green* v. *Illinois Dep't of Transp.*, 609 F. Supp. 1021, 1026–27 (N.D. Ill. 1985) (plaintiff's claim based on a continual course of post-judgment harassment barred by res judicata where an injunction in the earlier litigation could have "stopped this harassment"); *City of Chicago* v. *Harris Trust & Savings Bank*, 371 N.E. 2d 1182, 1186 (Ill. App. Ct. 1977) ("To hold that a prior adjudication on the merits is not a bar to the relitigation of the same case simply because each day the alleged violation exists constitutes a separate and distinct offense would be to defeat the purpose of the res judicata doctrine.").

The reasons for holding the instant action to be barred by res judicata are even more compelling than those in the cases discussed above. Here, not only was a permanent injunction against the Lucky Brand Marks a remedy that was available in the 2005 Action, but Marcel actually affirmatively sought (and ultimately abandoned) such a remedy. Indeed, Marcel expressly requested such a remedy in its counterclaims. (56.1 Stmt. ¶ 18.) And in the parties' Second Amended Joint Pre-Trial Statement, Marcel itself specifically identified the question of whether it was entitled to a permanent injunction against Lucky Brand's use of its Lucky Brand Marks as an issue to be decided at trial. (*Id.* ¶ 21.) And after trial, Marcel sought at the last minute to include a permanent injunction against the Lucky Brand Marks in the Final Order and Judgment, but then made the considered choice not to include any such injunction. (*Id.* ¶¶ 26–

29.)  Accordingly, the Final Order and Judgment fully resolved all of Marcel's demands for relief and provided all of the remedies that the Court deemed appropriate.

As a result, Marcel is bound by the Final Order and Judgment and barred from seeking new and additional relief for what it concedes are additional instances of the same conduct.[3]

## II.

### MARCEL HAS WAIVED ITS RIGHT TO SEEK INJUNCTIVE RELIEF OR FURTHER DAMAGES

Lucky Brand is also entitled to summary judgment because Marcel has waived its right to seek injunctive relief or further damages.

Waiver is the "voluntary abandonment or relinquishment of a known right." *Liebowitz* v. *Elsevier Science Ltd.*, 927 F. Supp. 688, 705 (S.D.N.Y. 1996); *see also Mooney* v. *City of New York*, 219 F.3d 123, 131 (2d Cir. 2000) (waiver is recognized where "parties were aware of their rights and made the conscious choice, for whatever reason, to waive them") (internal quotation marks omitted).  "Waiver may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage."  *Gen. Motors Acceptance Corp.* v. *Clifton-Fine Cent. Sch. Dist.*, 85 N.Y.2d 232, 236 (N.Y. 1995).[4]

Here, by consciously choosing not to include an injunctive relief provision in the Final Order and Judgment, Marcel voluntarily waived its right to such relief, and accepted and

---

[3]  Marcel's first cause of action must be dismissed for the additional reason that it improperly styles its request for an injunction as an independent claim for relief. *See, e.g., Michael Grecco Photography, Inc.* v. *Everett Collection, Inc.*, 589 F. Supp. 2d 375, 378 (S.D.N.Y. 2008) ("[A]n injunction…is a remedy, not a separate cause of action.").  Notably, Marcel's proposed amended complaint eliminates the separate "injunction" cause of action.

[4]  Waiver under New York law does not differ "in practical effect" from waiver under federal law. *Mooney*, 219 F.3d at 131.

acknowledged that Lucky Brand would continue to have the right to use its Lucky Brand Marks. Marcel also accepted and acknowledged that the relief granted by the Court—an injunction barring Lucky Brand from using the "Get Lucky" mark and a total of $300,000 in monetary damages—fully and appropriately compensated Marcel for any harm it had suffered and might continue to suffer as a result of Lucky Brand's use of its well-known Lucky Brand Marks.

Marcel's decision not to enjoin the future use of the Lucky Brand Marks was a knowing, considered and voluntary decision, which reasonably led Lucky Brand to believe that the continued use of its marks would be perfectly proper. Such conduct thus constitutes a waiver of Marcel's right to seek injunctive relief or further damages in this case. *See Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 Civ. 7203, 2006 WL 1012939, at *35 (S.D.N.Y. Apr. 19, 2006) (plaintiff waived its right to pursue trademark claims in second lawsuit when it withdrew those claims on the eve of trial in earlier action); *cf. Santana Prods., Inc.* v. *Sylvester & Assocs., Ltd.*, No. 06-5615-CV, 2008 WL 2164658, at *3 n.1 (2d Cir. May 22, 2008) (party "affirmatively waived" its right to file a reply brief "when it stipulated to a briefing schedule that did not permit it to file a reply brief").

### III.

### THERE IS NO BASIS FOR MARCEL'S REQUEST FOR INJUNCTIVE RELIEF AND DAMAGES

Even if the Court decides that Marcel's claims are not barred by res judicata or waiver, there is still no basis to award the relief that Marcel seeks. The approach set forth in the Final Order and Judgment recognized the parties' rights in their respective trademarks and provided a framework for Marcel and Lucky Brand, after years of litigation, to co-exist in the marketplace without further confusion or damage to their businesses or brands. Marcel now

17

seeks to dismantle this framework, but neither the undisputed factual record nor fundamental principles of equity support such a result.

The absence of an injunction against future use of the Lucky Brand Marks is not the result of a mistake or omission by the parties or this Court.  Marcel expressly pursued such an injunction in its counterclaims, and in drafting the Final Order and Judgment.  In the end, the Court (and Marcel) concluded that such an injunction was not warranted, and accordingly, the Final Order and Judgment provided for no such relief.[5]

The decision of whether to enjoin the use of a trademark is "an act of equitable discretion by the district court," in which the court assesses, among other things, the sufficiency of remedies available at law to compensate for injury and the balance of hardships between the parties. *See eBay, Inc.* v. *MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Consistent with this balancing test, a finding of infringement does not automatically lead to the issuance of an injunction, nor is an injunction necessarily the most appropriate remedy in all cases.  *See, e.g.*, *Jim Beam*, 937 F.2d at 737 ("[A] finding of likelihood of confusion in an infringement action does not automatically compel the issuance of an injunction barring use of the junior user's mark.").

The absence of an injunction on the future use of the Lucky Brand Marks is fully appropriate given the unique facts and circumstances of this case.  This is not a traditional trademark infringement action in which a junior user is attempting to benefit from the reputation and goodwill of a well-established, successful senior trademark owner.  Rather, the facts here show the opposite.  For more than 20 years, Lucky Brand has been a highly successful, youth-

---

[5]   Moreover, the Court specifically charged the jury with the role of determining what (if any) prospective monetary relief was required to correct any consumer confusion, and the jury ultimately determined that no prospective monetary relief was necessary.  (56.1 Stmt. ¶ 22.)

oriented jeanswear and sportswear brand, during which time Lucky Brand has invested considerable effort and money in building the company and the brand. (56.1 Stmt. ¶¶ 1–2.) Today, Lucky Brand has more than 180 retail stores throughout the United States, employs 2,700 people, and last year sold nearly $400 million in merchandise. (*Id.* ¶¶ 2–3.) It is the owner of numerous incontestable trademarks registered with the USPTO, which the Final Order and Judgment confirmed were "valid and enforceable." (*Id.* ¶¶ 4–5.)[6] Lucky Brand's tremendous success has nothing whatsoever to do with Marcel's modest apparel business that has traditionally focused on a niche market comprised of casinos, hotels, hospitals, Indian reservations and theme parks. Nor is the goodwill that Lucky Brand has built over 20-plus years in its Lucky Brand Marks due in any part to the rights Marcel may have in its "Get Lucky" mark.

Marcel's status as senior user of the single mark "Get Lucky" does not entitle Marcel—more than 20 years later—to destroy with a stroke of a pen Lucky Brand's entire hard-earned business and brand. Yet that is exactly the relief Marcel seeks here. An injunction prohibiting any further use of the Lucky Brand Marks would effectively put an end to the Lucky Brand business. The company would most likely have to close its more than 180 retail stores, stop the manufacture of its apparel and accessories, and lay off its 2,700 employees. At the very least, it would have to destroy all of its existing merchandise and promotional materials, change its name and re-launch its business under a new, unrecognized name, all at enormous expense. In the process, Lucky Brand would lose the 20-plus years of goodwill and customer loyalty associated with its brand. Such a result is inconsistent with fundamental principles of equity and at odds with the fundamental purpose of the Lanham Act.

---

[6]   In the parties' Pre-Conference Statement, filed with this Court on October 5, 2011, Marcel specifically "agree[d]" and admitted "that Lucky [Brand] owns valid federal trademark registrations for its Lucky Brand marks." (56.1 Stmt. ¶ 6.)

Trademark injunctions are designed to prevent or correct confusion, not to punish a trademark owner. *See Toyota Motor Sales, USA, Inc.* v. *Tabari*, 610 F.3d 1171, 1182 (9th Cir. 2010); *Am. Chicle Co.* v. *Topps Chewing Gum, Inc.*, 210 F.2d 680, 683 (2d Cir. 1954). The injunction Marcel seeks here, however, would dramatically *increase* consumer confusion, not prevent it. This is a case of reverse confusion, in which Lucky Brand—not Marcel—is the better-known, more successful brand. The thrust of Marcel's claims in the 2005 Action was that consumers were likely to believe that Marcel's products actually came from Lucky Brand. Marcel's requested injunction would not alleviate any such confusion. On the contrary, it would lead to increased consumer confusion by putting Lucky Brand out of business and allowing Marcel to sell similar merchandise under both the "Get Lucky" trademark *and* the Lucky Brand Marks, thereby causing consumers to assume—erroneously—that Marcel's products actually come from Lucky Brand.

The Seventh Circuit addressed a similar situation in *Illinois High School Association, Inc.* v. *GTE Vantage*, 99 F.3d 244 (7th Cir. 1996). In that case, the Illinois High School Association ("IHSA"), which originally coined the term "March Madness," sought to enjoin the NCAA's use of that mark in connection with its annual basketball tournament. Even though IHSA was technically the senior user of the mark, the court found that consumers had come to associate the term with the NCAA. The court reasoned that "IHSA might have a remedy on a theory of reverse confusion, though probably not an injunctive remedy since that would promote confusion among consumers, most of whom now identify the term with the NCAA tournament." *Illinois High School Ass'n*, 99 F.3d at 246–47. The same is true here, where an injunction prohibiting Lucky Brand from any further use of its Lucky Brand Marks

would promote confusion among consumers who have come to identify those trademarks with Lucky Brand.

In sum, there is simply no basis, as a matter of equity, to enjoin Lucky Brand's use of its well-known and long-established Lucky Brand Marks. For the same reasons, there is no reason to award any monetary relief beyond that already granted in the Final Order and Judgment. Under these circumstances, the question of whether the marks should be enjoined is closely intertwined with the question of whether Marcel is entitled to any additional monetary relief with respect to the continued use of those marks. If Lucky Brand is not enjoined from using its Lucky Brand Marks, then it necessarily follows that Marcel is not entitled to any additional monetary relief as a result of Lucky Brand's continued use of those marks. That is especially true where—as here—Marcel has effectively conceded that Lucky Brand's use of its marks is wholly consistent with how those marks were used at the time of the 2005 Action.

## IV.

### THE ALLEGATIONS IN MARCEL'S PROPOSED AMENDED COMPLAINT IN NO WAY DEFEAT THE APPLICATION OF SUMMARY JUDGMENT HERE

Finally, Marcel's last-minute attempt to evade summary judgment through the submission of a proposed amended complaint is meritless since the proposed amendment suffers from the same infirmities as the original complaint. In particular, the proposed amendment (i) fails to identify a single example of Lucky Brand using its marks in a way that materially differs from how those marks were used at the time of the 2005 Action, and (ii) seeks the exact same relief that was available to Marcel in the prior action.

*First*, throughout the proposed amendment, the Lucky Brand trademarks are misleadingly defined as the "GET LUCKY Mark," as opposed to the Lucky Brand Marks. (Johnson Decl., Exh. 28 ([Proposed] First Am. Compl.) ¶ 1.) Through the use of this deceptive

21

defined term, Marcel seeks to create the false impression that Lucky Brand has continued to use the "Get Lucky" trademark (or similar variations thereof).  Yet, Marcel fails to identify a single example of any such use.  Indeed, Marcel has effectively conceded that Lucky Brand has not continued to use the "Get Lucky" trademark.  When Marcel first provided Lucky Brand with a copy of its proposed amended complaint on December 14, 2011, the first numbered paragraph of the proposed amendment alleged that Lucky Brand "continu[ed] to use both the GET LUCKY trademark, as well as derivatives, variations and colorable imitations thereof."  (56.1 Stmt. ¶ 41.) After corresponding with Marcel's counsel regarding the good-faith basis under Rule 11 for such an allegation, Marcel changed the wording of the first numbered paragraph to eliminate any reference to Lucky Brand's continued use of the "Get Lucky" trademark.  (*Id.* ¶ 43; *compare* Johnson Decl., Exh. 26 (Dec. 14, 2011 Draft [Proposed] First Am. Compl.) ¶ 1, *with id.*, Exh. 28 ([Proposed] First Am. Compl.) ¶ 1; *see also* Griffin Aff. ¶ 6 (confirming that Lucky Brand has not used the "Get Lucky" trademark in any way since the entry of the permanent injunction).)

Nevertheless, despite conceding that Lucky Brand has not made any use of the "Get Lucky" trademark, Marcel still seeks to define the allegedly infringing Lucky Brand trademarks as the "GET LUCKY Mark," without making any attempt whatsoever to identify exactly which Lucky Brand trademarks are meant to be included in this new defined term.  For purposes of this motion, we assume that only those marks that include the word "Lucky" are at issue—*i.e.*, the exact same marks that appear to be at issue in Marcel's original complaint, and the exact same marks that were at issue in the 2005 Action.  The mere fact that Marcel now seeks to use a different term to define the same set of marks obviously does not alter any of the analysis herein, and is plainly insufficient to defeat summary judgment.

22

*Second*, there are several references to Lucky Brand's "new and continued use" of its trademarks, but Marcel never actually identifies any "new" use other than a vague reference to the use of the Lucky Brand Marks on "new collections of clothes, styles, and designs." (Johnson Decl., Exh. 28 ([Proposed] First Am. Compl.) ¶¶ 5, 36–37, 46.)  Significantly, Marcel does not—and cannot—allege that any of those "new collections of clothes, styles, and designs" are materially different than the "collections of clothes, styles, and designs" that were at issue in the 2005 Action.  (*See* Griffin Aff. ¶ 7 (confirming that Lucky Brand has not used its marks in connection with any styles or designs that are materially different from those at issue in the 2005 Action).)  Likewise, Marcel does not—and cannot—claim that the alleged "new collections of clothes, styles, and designs" have caused any increase in consumer confusion beyond that already addressed and fully resolved in the 2005 Action.  Accordingly, Marcel's vague and unsupported reference to so-called "new" uses of the Lucky Brand Marks does nothing to defeat the application of res judicata here.  *See R.G. Group, Inc.* v. *Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (plaintiff seeking to avoid summary judgment may not rest upon mere conclusory allegations, but must set forth "concrete particulars" establishing a material issue of disputed fact).

*Third*, the proposed amendment also refers to Lucky Brand's purchase of certain search engine advertising keywords.  (Johnson Decl., Exh. 28 ([Proposed] First Am. Compl.) ¶¶ 5, 46.)  Once again, however, Marcel makes no attempt to identify any specific keywords or any specific search engine.  Simply put, Marcel does not—and cannot—allege that Lucky Brand has purchased any search engine keywords beyond those it was already using at the time of the 2005 Action.  (*See* Cole Aff. ¶¶ 2–3 (confirming that Lucky Brand has not purchased any search engine advertising keywords that are materially different from the keywords it used during the

23

time of the 2005 Action).)  And Marcel does not—and cannot—claim that the purchase of those advertising keywords has caused any increase in consumer confusion beyond that already addressed and fully resolved in the 2005 Action.  Thus, Marcel's vague reference to Lucky Brand's purchase of unidentified search engine keywords does nothing to defeat the application of res judicata here. *See R.G. Group, Inc.*, 751 F.2d at 77.

*Fourth*, there is a new allegation that Lucky Brand is in "contempt" of the permanent injunction against the use of the "Get Lucky" trademark.  (Johnson Decl., Exh. 28 ([Proposed] First Am. Compl.) ¶¶ 48–50.)  Not surprisingly, Marcel fails to identify even a single instance of Lucky Brand using one of its trademarks in a manner that runs afoul of that injunction.  Nor does Marcel explain why, if it believed Lucky Brand was in violation of an existing permanent injunction, it chose to file a plenary lawsuit in Florida rather than a contempt proceeding in this Court.  And Marcel makes no attempt to reconcile its new allegation with its prior admission in this case that the Final Order and Judgment "does not contain specific injunctive language against Defendants using its LUCKY BRAND marks and any mark including the word Lucky."  (56.1 Stmt. ¶ 36.)  For these reasons, there is simply no basis for Marcel's allegation that Lucky Brand is in contempt of the prior permanent injunction.

*Fifth*, there is a new allegation that certain registered Lucky Brand trademarks were obtained "fraudulently."  (Johnson Decl., Exh. 28 ([Proposed] First Am. Compl.) ¶¶ 51–56.)  Of the 12 marks identified, none involves the words "Get Lucky," two of the marks contain no reference whatsoever to the word "Lucky" (Reg. No. 2,400,358 and Reg. No. 2,129,881), three of the registrations are no longer active (Reg. No. 2,330,052, Reg. No. 2,381,638 and Reg. No. 2,383,437), and all but two of the marks (Reg. No. 1,646,123 and Reg. No. 3,107,591) were registered during the time when Marcel did not have an active registration for its "Get Lucky"

mark. (*See* Johnson Decl. ¶ 13.) In any event, all of these marks were registered well before the trial in the 2005 Action, and they were expressly referenced in the Final Order and Judgment. (*Id.*) Thus, to the extent that Marcel believed any of these registrations were obtained fraudulently, it could have—and should have—raised that issue in the 2005 Action. For the reasons discussed above, it is barred from doing so now.

*Finally*, three individual defendants are added to the caption, even though the proposed amended complaint contains no specific or unique allegations of misconduct with respect to any of those individuals. (*Id.*, Exh. 28 ([Proposed] First Am. Compl.) ¶¶ 6, 39–41, 72–74.) The assertion of already futile claims against three individual defendants cannot cure the deficiencies in the complaint, and in no way alters the analysis and conclusions herein.

In sum, none of these proposed changes raises any new, material facts that would preclude the grant of summary judgment for the reasons discussed above. Accordingly, the proposed amendment should be denied as futile.

## Conclusion

For the foregoing reasons, Lucky Brand respectfully requests that the Court grant its motion for summary judgment and dismiss Marcel's complaint in its entirety, with prejudice.

Dated: January 23, 2012
New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:_____

Leslie Gordon Fagen (lfagen@paulweiss.com)
Darren W. Johnson (djohnson@paulweiss.com)

1285 Avenue of the Americas
New York, New York  10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Defendants Lucky Brand Dungarees, Inc., Liz
Claiborne, Inc., and Lucky Brand Dungarees Stores, Inc.*

26